## DOBSON a. PEARCE.

*Court of Appeals ; December Term, 1854.*

FRAUDULENT JUDGMENTS.—EFFECT OF DECREE OF A COURT OF ANOTHER STATE.

It is a good defence to an action upon a judgment,—whether brought by the original judgment creditor or his assignee,—that the judgment was fraudulently obtained.

A court of equity has jurisdiction to make a decree restraining a judgment creditor from bringing suits upon his judgment, upon the ground that it was fraudulently obtained.

A duly authenticated record of such a decree, rendered in a court of equity of another State having jurisdiction of the parties, is a *conclusive* defence against the prosecution in a court of this State, of a suit upon the judgment referred to in the decree.

Such decree is conclusive upon the parties everywhere and in every forum, where the same matters are drawn in issue ; not indeed as an injunction, but as a judgment of a court of another State.

Appeal from judgment upon a verdict.

This was an action in the nature of an action of debt on a judgment rendered in the New York Superior Court, April 17, 1847, for $612.93, in favor of one James N. Olney, against Abner T. Pearce, the defendant, and afterwards assigned to Thomas Dobson, the present plaintiff.

From the answer, it appeared that the judgment sued upon was fraudulently entered up by Olney. The defendant was a resident of Connecticut ; but being casually in the city of New York in 1846, Olney procured a *capias* to be served upon him ; and by assurances that no further proceedings should be taken in the suit so commenced, induced him not to appear ; and in consequence of his non-appearance, judgment was, without his knowledge, entered up against him by default. About two years afterwards, Olney commenced an action of debt on this judgment, in the Superior Court of the State of Connecticut. While this action was pending, the defendant commenced a suit upon the Chancery side of the Superior Court of Connecticut, complaining that the judgment upon which he was

7

sued at law, was fraudulently procured against him, and was based upon an unfounded claim; and praying that Olney might be perpetually enjoined from prosecuting the suit upon it. On the tenth of September, 1850, an attorney having appeared for Olney in the chancery suit, and proofs having been put in, it was decreed that the facts alleged by Pearce against Olney in relation to the fraudulent entry of the judgment, and the character of the claim upon which it was based, were true; and Olney was enjoined against prosecuting his action then pending against Pearce, upon the judgment. He accordingly withdrew the action, and judgment was rendered for Pearce, the defendant. But on the following day, Olney assigned the original judgment to Dobson the present plaintiff; who although acquainted with the facts above stated, commenced this action upon it.

The reply denied the allegations of the answer.

The cause was three times tried.

Upon the first trial, before Mr. Justice Paine, June 19, 1851, after the plaintiff had proved the judgment, and the assignment of it by Olney, to himself, the defendant offered in evidence a record duly authenticated of the proceedings in the chancery suit in Connecticut, including the decree, and moved for a dismissal of the complaint, on the ground that the plaintiff was estopped and barred from prosecuting his suit, by the adjudication of the Superior Court of Connecticut. The court decided that the decree of the Superior Court of Connecticut did not constitute any such bar or estoppel, and denied the motion; and defendant's counsel excepted.

The defendant's counsel then offered the same record in evidence, as matter of defence to the suit. The plaintiff's counsel objected, and the evidence was excluded; the defendant's counsel excepting. A verdict was, by direction of the court, found for the plaintiff. The defendant moved to set this verdict aside, which motion was directed to be heard at general term. The court at general term granted the motion and ordered a new trial.*

---

* The proceedings in the case before the general term are reported 1 *Duer*, 142. See also 10 *N. Y. Leg. Obs.*

At the second trial, before Mr. Justice Campbell, January 3, 1853, after the plaintiff's evidence was in, the defendant offered in evidence the record of the proceedings in the Superior Court of Connecticut, which was admitted, subject to exception on the part of plaintiff, and moved for a dismissal of the complaint, on the ground as before; that the Connecticut decree estopped the plaintiff. The plaintiff's counsel opposed this motion, and read in evidence, subject to exception by defendant, the record of the proceedings in the suit commenced by him at law in Connecticut, to recover upon the judgment now in suit. According to the record, the suit at law was withdrawn before the decree in equity restraining its prosecution was made, instead of afterwards, as intimated in defendant's answer. Plaintiff also offered evidence to prove that the decree in equity of the Connecticut Superior Court was fraudulently procured, and without any notice to Olney of the institution of the suit. The court refused to receive this evidence, deciding that the record of the proceedings in the chancery suit could not be collaterally impeached; and dismissed the complaint, entering judgment for the defendant.

The plaintiff appealed from this judgment to the general term; where it was reversed for error in the exclusion of the evidence offered by plaintiff, and a new trial ordered.

This third trial was had before Mr. Justice Duer, April 5, 1853, and the evidence offered on the part of both plaintiff and defendant, at the previous trial before Justice Campbell, was put in, subject to like exceptions. The court instructed the jury that the Connecticut decree was conclusive upon the plaintiff, if the jury found that Olney appeared in the chancery suit by his authorized attorney; otherwise he was not bound by it.

The jury found for defendant; and judgment having been afterwards rendered in his favor at special term, the plaintiff appealed to the general term, where it was affirmed.

From this judgment the plaintiff appealed to the Court of Appeals.

*E. Terry*, for appellant.

*A. Childs*, for respondent.

JOHNSON, J.—The questions in this cause arise upon two exceptions taken at the trial. The first was taken to the decision admitting in evidence the record of a decree in equity, made by the Superior Court of Judicature of the State of Connecticut, between the defendant in this suit and one Olney, the immediate assignor to the plaintiff of the judgment now sued upon. The second was to the instruction of the court to the jury, that the record of the proceedings, finding, and decree aforesaid, given in evidence by the defendant to support the allegations in his answer, was, for the purposes of this suit, conclusive evidence upon the plaintiff, if the jury found that Olney appeared in that cause by his authorized attorney.

The plaintiff is in the same position which Olney would have occupied had he been plaintiff; he is the immediate assignee of Olney, against whom, before the assignment, the decree was pronounced; and if it be material, he had actual notice of the decree when the assignment was made to him. Giving to the plaintiff's objections to the admission of the record the broadest effect, the first question is, whether the defence set up by the answer was available. That defence is, in substance, that the judgment sued upon was *fraudulently entered* up, after assurances on behalf of the plaintiff in that suit, to the defendant, that no further proceedings should be taken in the suit without notice to him, whereby he was induced not to take steps to interpose a defence, which in point of fact he could successfully have maintained.

Relief against such a judgment upon these facts would have been within the power of a court of equity in this State, upon a bill filed for that purpose. (2 *Story, Eq. Jur.*, §§ 887, 896. Huggins *v.* King, 3 *Barb., S. C. R.*, 616). The Code (§ 69), having abolished the distinction between actions at law and suits in equity, and the forms of all such actions as heretofore existing, an equitable defence to a civil action is now as available as a legal defence.

The question now is, ought the plaintiff to recover? and anything which shows that he ought not is available to the defendant, whether it was formerly of equitable or legal cognizance.

The next question is, whether the record of the decree of the Superior Court of Connecticut was competent evidence upon

this issue. Olney actually appeared by his attorney in that suit, and was heard upon its merits. He was, therefore, before the court, and it had jurisdiction of his person, if it had jurisdiction of the subject matter of the suit. The object of the suit was to restrain Olney from prosecuting a suit at law in the same court upon the judgment in suit here, and the grounds on which that relief was sought were the same which are set up as a defence here. The jurisdiction to restrain suits at law being one of the firmly established parts of the authority of the courts of equity, and the plaintiff in the suit which was enjoined having undertaken to prosecute that suit in a court of law in the State of Connecticut, the only conceivable grounds for denying the equitable jurisdiction which was exercised in the case, are either that no court of equity anywhere had power to restrain a suit upon a judgment at law upon such grounds, or that a court of equity *in one State* has no jurisdiction to restrain such a suit upon a judgment of a court of law of another State. The first of these grounds has already been considered and found unsound. The other rests either upon some ground of comity between States, or upon the force of the constitution and laws of the United States.

The objection, so far as it is founded upon an assumed violation of the comity which exists between the several States of the United States, does not reach to the jurisdiction of the court.

The rules of comity may be a restraint upon a court in the exercise of an authority which it actually possesses, but it is *self-imposed.* (Bank of Augusta *v.* Earle, 13 *Pet.*, 519). The courts of each State must judge for themselves exclusively how far they will be restrained, and in what cases they will exercise their power, except where the constitution of the United States and the laws made in pursuance of it prescribe a rule; where that is the case, the question ceases to be one of comity, and becomes one of right.

The question then remains to be considered upon the constitution and laws of the United States, and here the decisions permit of no doubt.

"Full faith and credit" are given to the judgment of a State court, when in the court of another State it receives *the*

*same faith and credit*. to which it was entitled in the State where it was pronounced. (Hampton *v.* McConnell, 3 *Wheat.*, 234). We have then a decree of the Superior Court of Connecticut, in a cause where they had jurisdiction of the subject matter and of the parties, and it is duly authenticated and relevant to the issue on trial. Its admissibility in evidence follows, of course.

By the record of that decree, it appears that the very matters in issue here were litigated there, and were decided adversely to Olney, whom the plaintiff represents. The determination is necessarily conclusive upon him as to all the material facts there litigated and determined.

Judgment affirmed with costs.

ALLEN, J.—A judgment rendered by a court of competent jurisdiction cannot be impeached *collaterally* for error or irregularity, but is conclusive until set aside or reversed by the same court, or some other court having appellate jurisdiction. (Smith *v.* Lewis, 3 *J. R.*, 157; Homer *v.* Field, 1 *Pick.*, 488.) *The jurisdiction* of the court in which a judgment has been rendered is, however, always open to inquiry, and if it has exceeded its jurisdiction, or has not acquired jurisdiction of the parties by the due service of process, or by a voluntary appearance, the proceedings are *coram non judice*, and the judgment is void. The want of jurisdiction has always been held to be a valid defence to an action upon the judgment, and a good answer to it when set up for any purpose.

So, fraud and imposition invalidate a judgment, as they do all acts, judicial as well as extra-judicial; and it is not without semblance of authority that it has been suggested, that at law the fraud may be alleged whenever the party seeks to avail himself of the result of his own fraudulent conduct by setting up the judgment, the fruits of his fraud. (See per Thompson, C. J., in Borden *v.* Filch, 15 *Johns. R.* 121, and cases cited.)

But whether this be so or not, it is unquestionable that a court of chancery has power to grant relief against judgments when obtained by fraud. Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not avail himself at law, but was prevented by fraud or accident unmixed with any fault or negli-

gence in himself or his agent, will justify an interference by a court of equity. (Reigal *v.* Wood, 1 *Johns. Ch. R.* 402 ; McDonald *v.* Neilson, 2 *Cow. R.* 139 ; Duncan *v.* Lyons, 3 *Johns. Ch. R.* 351; Marine Insurance Company of Alexandria *v.* Hodgson, 7 *Cranch*, 352 ; Shottenkirk *v.* Wheeler, 3 *Johns. Ch. R.* 275).

Under our present judiciary system the functions of the courts of common law and of chancery are united in the same court, and the distinctions between actions at law and suits in equity, and the forms of all such actions and suits are abolished, and the defendant may set forth by answer as many defences as he may have, whether they be such as have been heretofore denominated *legal* or *equitable*, or *both*. (Code § 69, § 150). The Code also authorizes affirmative relief to be given to a defendant in an action, by the judgment, (§ 274). The intent of the legislature is very clear, that all controversies respecting the subject matter of the litigation should be determined in an action, and the provisions are adapted to give effect to that intent.

Whether, therefore, heretofore, fraud or imposition in the recovery of a judgment could have been alleged against it collaterally *at law*, or not, it may now be set up as an equitable defence to defeat a recovery upon it. Under the head of equitable defences are included all matters which would before have authorized an application to the Court of Chancery for relief against a legal liability, but which, at law, could not have been pleaded in bar. The facts alleged by way of defence in this action would have been good cause for relief against the judgment in a court of chancery, and under our present system are, therefore, proper matters of defence, and there was no necessity or propriety for a resort to a separate action to vacate the judgment.

In Connecticut, although law and equity are administered by the same judges, still the distinction between law and equity is preserved, and justice is administered under the heads of common law and chancery jurisdiction, by distinct and appropriate forms of procedure ; and hence, as it was at least doubtful whether at law the fraud alleged would bar a recovery upon the judgment, a resort to the chancery powers of the court of that State was proper, if not necessary.

The right of the plaintiff in the judgment was a *personal* · right, and followed his person, and, aside from the fact that he had resorted to the. courts of Connecticut to enforce his claim under the judgment, the courts of that State, having obtained jurisdiction of his person by the due service of process within that State, had full power to pronounce upon the rights of the parties in respect to the judgment, and to decree concerning it.   It necessarily follows that the decree of the Supreme Court of Connecticut, sitting as a court of chancery, directly upon the question of the fraud, is conclusive upon the parties to that litigation, and all persons claiming under them with notice of the adjudication.   The judgment of a court of competent jurisdiction upon a point litigated between the parties, is conclusive in all subsequent controversies, when the same point comes again in question between the same parties. (White *v.* Coatsworth, 2 *Seld.* 137 ; Embury *v.* Conner, 3 *Comst.* 522).   In the State of Connecticut it is quite clear the question of fraud would not be an open question between the parties, but would be considered entirely settled by the decree of the court of that State, and as " full faith and credit " is to be given by each State, to the judicial proceedings of every other State, that is, the same credit, validity and effect as they would have in the State in which they were had, the parties are concluded in the courts of this State by the judgment of the court in that State, directly upon the question in issue. (Hampton *v.* McConnell, 3 *Wheat.* 234).   The decree of the court of chancery of the State of Connecticut, as an operative decree, so far as it enjoined and restrained the parties, had and has no extra-territorial efficiency, and, as an injunction, does not affect the courts of this State ; but the judgment of the court upon the matters litigated is conclusive upon the parties, everywhere and in every forum where the same matters are drawn in question.   The court acquired jurisdiction of the parties by the commencement of the action and the service of process upon the defendant therein, and his appearance by an authorized attorney, and the withdrawal of the action of debt upon the judgment did not deprive it of jurisdiction thus acquired. The judgment of the Superior Court must be affirmed with costs.

DENIO, J., (stated the following as the conclusions to which he had arrived).

1. The judgment of the Superior Court in New York, notwithstanding the alleged- fraud, was conclusive upon the defendant in it; and in an action upon it, no allegation of matter of fact, *in pais*, could be admitted to impeach its validity. It could only be relieved against on motion, or by an action in the nature of a bill in equity.

2. It was, under the constitution and laws of the United States, equally conclusive in the courts of Connecticut as in this State.

3. But it was competent for the courts in this State, or in any other State which had obtained jurisdiction of the person of the plaintiff, by a *direct* proceeding, to impeach the equitable obligation of the judgment on the ground of fraud, surprise, or mistake in obtaining it, or for any other matter which, according to the principles of a court of chancery, would render it inequitable and unconscientious for the plaintiff to insist upon the recovery.

The jurisdiction of courts of equity in this respect is well stated in Pearce *a.* Olney, (20 *Conn.* 544,) where the question upon this judgment was examined by the Supreme Court of Errors of Connecticut. (See also 2 *Cowen*, 193, and cases cited).

4. If a court in this State, in such a suit as is referred to under the last head, had given judgment to the effect that the judgment of the Superior Court had been obtained by fraud or mistake, or in such a manner in any respect that it could not be conscientiously enforced, such determination would have been a bar in an action at law on such Superior Court judgment. It would have been similar to a decree in chancery setting aside a contract or conveyance, which it cannot be doubted would have barred an action at law on such contract or conveyance.

5. The judgment or decree of the Supreme Court of Errors in Connecticut (that court having jurisdiction of the parties) is equally effectual as a judgment to the same effect in this State would have been. This results from the constitutional provision before referred to, and the act of Congress which

declares that the records of judicial proceedings of the States, authenticated as provided by that act, "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence the said records are or shall be taken." (Laws U. S. by *Story*, p. 93).

6. The judgment of the Supreme Court of Judicature of Connecticut, determining that the facts set forth in the defendant's petition were true, and forever enjoining a prosecution of the judgment of the Superior Court of New York, is a determination as to the equitable validity of the judgment, and precludes the plaintiff from insisting upon it, as well in every State where the judicial proceedings of Connecticut are entitled to full credit, as in the State of Connecticut itself. This results from the principle, that a matter once litigated and determined in a court of competent jurisdiction cannot ever again be drawn in question by the same parties, or any others standing in legal privity with them. (Le Guen *v.* Gouverneur & Kemble, 1 *Johns. Cas.*, 436).

7. It follows, from these positions, that the judgment in Connecticut is a perfect bar to the action brought upon the judgment of the Superior Court.

The judgment appealed from should therefore be affirmed.