DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## April, 1882.

---

### BANK OF MONROE, Appellant, v. THE STATE OF NEW YORK, Respondent.

*Board of State auditors — chap. 444 of 1876 — power of, to review a claim allowed by the canal commissioners — may disallow it if fraudulent — agreement to procure the passage of an act by the legislature — when it is illegal.*

In 1869 one Hand entered into a contract with the State for the dredging and removing of deposits from Black Rock harbor, and thereafter received the price agreed to be paid therefor, viz., $39,585. In 1871 one Bennett, a partner of Hand's, entered into an agreement with one Lord, a member of the legislature, by which it was agreed that Lord should procure the passage of an act by the legislature requiring the canal commissioners to examine into a claim made by Hand for extra compensation and, if the price paid was found insufficient, to allow such additional sum as would reasonably reimburse him, Lord to have two-thirds of any award which might be made under the act. The act was passed and the canal commissioners subsequently met and awarded the contractor the additional sum of $36,845, for which amount certificates were issued, $24,563.32 being given to one Kiley who represented Lord, $2,000 to one Davis the attorney who represented the State, $1,000 to the attorney who represented Lord and $9,281.60 to the contractor. Thereafter one of the certificates given to Kiley was assigned in blank and discounted by the appellant, and thereafter and in September, 1880, presented to the board of State auditors by which it was disallowed.

*Held,* that the board of State auditors had power to inquire into the justice of the claim, and were not concluded by the certificate of the canal commissioners.

That the agreement with Lord was fraudulent, corrupt and unlawful, and that the facts proved showed that the claim presented to and allowed by the canal commissioners was fictitious and fraudulent.

That the plaintiff stood in no better position than did its assignor.

That the board properly disallowed the claim.

APPEAL from the decision of the State board of audit, disallowing the claim·made by the appellant for the payment of a canal commissioner's certificate for the sum of $16,000.

John Hand in 1869 made a contract with the State for dredging and removing deposits from Black Rock harbor, under which he received the contract price, viz., $59,583. L. J. Bennett, a partner of Hand's in this work, thereafter entered into an agreement with George D. Lord, a member of the legislature, by which it was agreed that Lord should procure the passage, by the legislature, of an act requiring the canal commissioners to inquire into a claim made by Hand for extra compensation and, if it was found that the price paid was insufficient, to allow such additional sum as would reasonably reimburse him, Lord to have two-thirds of any award which might be made under the act. The act was passed and $36,845 was awarded the contractor. For this amount certificates were issued. Of these certificates, $24,563.32 were given to one John Kiley who represented Lord, $2,000 to Thaddeus C. Davis who appeared as counsel for the State in the proceedings before the canal commissioners, $1,000 to William H. Bowman who appeared as counsel for Lord and $9,281.60 to Bennett and the contractor Hand. One of these certificates for $16,000 was received by the Bank of Monroe as collateral to the note of Kiley discounted by that bank. The certificate was presented to the State board of audits by which it was disallowed.

*James Breck Perkins*, for the appellant.

*Leslie W. Russell*, attorney-general, for the State of New York, respondent.

HAIGHT, J.:

In July, 1869, one John Hand entered into a contract with the State for the dredging and removing of deposits from the Black

Rock harbor. The contract price for such work amounted to the sum of $39,585, which was paid by the State. L. J. Bennett and one Spaulding were the copartners of Mr. Hand and interested in the profits arising under such contract. Subsequently, and in the year 1871, the legislature passed an act for the relief of John Hand by which the board of canal commissioners was required to take testimony as to the sufficiency of the prices paid for dredging Black Rock harbor. If such prices were found insufficient the board was required to allow such additional sum as would reasonably reimburse him. (Chap. 585, Laws of 1871.)

The board of canal commissioners met pursuant to such act, and after hearing the parties and examining witnesses awarded the contractor the additional sum of $36,845. Such sum was divided into various amounts, and certificates were issued by the canal appraisers therefor. Among such certificates was the one in question for $16,000. This certificate was assigned by L. J. Bennett, leaving the assignee's name blank, and was subsequently presented by John Kiley to the Bank of Monroe, and was discounted by such bank. The bank, on or about the 8th of September, 1880, presented its claim, based upon this certificate, to the board of State auditors, who, after taking the evidence submitted by the respective parties and hearing the parties, held and decided that the certificate was invalid and did not constitute a lawful claim in favor of the holder against the State. From such decision an appeal was taken to this court.

The first question presented for review on the part of the appellant is, that the board of canal commissioners was a court appointed by the State itself, to pass upon the sums to be paid to the contractors, and that court having made its decision, the decision is binding upon the State, and cannot be opened, and the merits of such claim investigated by the board of State auditors.

The statute establishing the State board of audit provides, section 2: "It shall be the duty of said board of audit, and it shall have power to hear all private claims and accounts against the State (except such as are now heard by the canal appraisers according to law), to administer oaths and take testimony in relation thereto, to determine on the justice and amount thereof, and to allow such sums as it shall consider should equitably be paid by the State to the

claimants." (Chap. 444 of the Laws 1876.) The power here given is to determine on the *justice* and the amount of the claim, and to allow such sums as it shall consider should *equitably* be paid by the State, etc. This power is doubtless equivalent to that of a board of arbitrators, and its decisions, when made upon any question coming within its jurisdiction, are as conclusive as if made by any of the regularly constituted courts of the State. The statute gives it power to determine the justice and equity of the claim. It therefore has the power of a court of equity, as to the matters over which it is given jurisdiction. If the award made by the canal commissioners becomes a judgment against the State, and the State is bound thereby, then why should it become necessary to present this claim to the board of State audit? The decision of one board would be no more binding upon the State than that of the other. The latter board, if the appellant's claim is correct, would have no power to inquire into the merits of the claim as passed upon and determined by the other board. If, however, it be conceded, for the sake of the argument, that the award made by the canal commissioners is as binding as that of a judgment rendered in a court, even then a court of equity has power to grant relief as against the judgment procured by fraud; and in an action brought on such judgment, may allege and prove as a defense that it was obtained through fraud. (*Dobson* v. *Pearce*, 12 N. Y., 156; *State of Michigan* v. *The Phœnix Bank*, 33 id., 9, 23, 24, 25; *Kinnier* v. *Kinnier*, 45 id., 535.)

The case of the *State of Michigan* v. *The Phœnix Bank* (*supra*) was an action to recover back money paid upon an award made by a board of State auditors upon the ground that the claim was fictitious and procured by fraud and imposition on the part of the claimant. The court in that case stated the rule to be that as to the regularity of the award or decision, or of any legal errors in obtaining it, the court could not take cognizance nor exercise any appellate power or power to review, and in any collateral attempt at law to impeach the decision it must be regarded as binding and operative; but with relation to any fraudulent conduct of the parties in obtaining it the court could take cognizance. That was a question legitimately within the province of the equitable power of the court and constitutes one of the principal grounds of their jurisdiction. Again, the

learned justice writing the opinion of the court, and to sustain this doctrine quotes from the case of the *New York Exchange Company* v. *Dewolf*, and states : " Whether the means of fraud be oral or in writing, whether executed by the parties with all the solemnities of deeds under seal and by due form of acknowledgment, *or even by judgment stamped by the judicial sanction of a court*, if a party have been induced to enter into the one, or to execute the other by fraudulent devices and designs of the party who thus secures the advantage, the law when invoked declares the whole transaction a nullity." In 45 New York (*supra*) the rule is stated : " Judgment may be impeached for fraud or want of jurisdiction." And this rule applies as well to judgments of other States as to those rendered in our own. The State board of audit having been given the power to determine on the justice and equity of the claim, have the same right to determine as to whether the award of the canal commissioners was obtained by fraud as would a court of equity. The board of State audit has found as a fact that George D. Lord was a member of the legislature during the year 1871 ; that in the month of February, 1871, an agreement was made between Mr. Lord and L. J. Bennett by which it was agreed that Lord should procure the passage of the act of the legislature referred to, requiring the canal commissioners to examine into the claim for extra compensation, etc. ; that by the terms of such agreement Mr. Lord was to have two-thirds of any award which might be made under the authority of the act. Subsequently chapter 585 of the Laws of 1871 was passed, and George D. Lord, then being a member of the legislature, used his influence for and promoted the passage of the act. Subsequently, at a meeting of the canal commissioners pursuant to such act, the award of $36,845 was made. The commissioners signed certificates of the awards and the same were delivered to Mr. Bennett and William H. Bowman, attorney and counselor for Mr. Lord, and to one Kiley, who was an employe of Mr. Lord ; that subsequently L. J. Bennett gave one of such certificates for $2,000 to the attorney who appeared before the commissioners on behalf of the State, and another certificate of $1,000 to William H. Bowman, attorney and counselor for Lord. The State board of audit has found as conclusions of law : " That the agreement between George D. Lord, a member of the legislature,

and L. J. Bennett, one of the contractors, by which Lord was to receive two-thirds of a contingent award, was a consideration for his influence in obtaining legislative authority to hear and determine the claim for extra compensation, was fraudulent, corrupt and unlawful and rendered said certificate of sixteen thousand dollars invalid as a claim against the State in the hands of the said George D. Lord or said John Kiley." They also held as a conclusion of law that the Bank of Monroe took said certificate, as assignee, subject to any defenses the State might have against the same in the hands of said assignor, said Lord or said Kiley.

The board has not in terms found that the claim presented before the canal commissioners was fictitious and fraudulent, but we are of the opinion that such a conclusion is warranted from the facts found by the board, and is warranted by the evidence. It appears from the findings of fact that the claim presented before the canal commissioners, and which was allowed by them, was for the sum of $36,845. That of that sum two thirds was given to Lord, or Kiley who represented him; to the attorney who appeared for the State, $2,000; to Mr. Bowman, attorney for Mr. Lord, $1,000. This would leave for Mr. Bennett and the contractor the sum of but $9,281.60. Mr. Bennett himself testifies: "I thought it was more than I ought to have. I thought the award was a very liberal one, and it seemed more to me than I ought to have." It is therefore quite apparent that this claim presented to and audited by the canal commissioners, was at least largely fictitious and fraudulent.

It was conceded on the argument that these certificates were not negotiable, and the claimant stands simply in the position of an assignee of a chose in action. An assignee of a chose in action takes subject to all the equities existing between the original parties. The act of the legislature in question being procured through bribery, the claim presented to the canal commissioners being fictitious and fraudulent it, will not be claimed that the State ought to pay the certificate in the hands of George D. Lord, or John Kiley, who represents him. The bank of Monroe, having taken the same, subject to all the equities existing between the State and Mr. Lord, stands in no better position to maintain the claim than would George D. Lord, himself.

From an examination of the testimony in this case, we are of

the opinion that the findings of fact by the State board of audit should be sustained.

The decision should be affirmed, with costs.

HARDIN, J., concurred; SMITH, P. J., not voting.

Decision of the State board of audit affirmed, with costs.