By the Court.—Monell, J.
It is objected in this case that the contract between the parties, not being in writing, was void under the statute respecting fraudulent conveyances and contracts relating to lands (2 Rev. Stat., 134). That statute provides (§ 8), that every contract for the sale of any land, or interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, or be subscribed by the party by whom the sale is to be made.
The contract in this case is, I think, sufficiently *423 definite and certain to "render it valid, if it is not affected Tby the statute referred to. The contract was hy parol, and related to the purchase of lands. Such contract is not, in express words, declared to he void. . The agreement was that the parties should jointly purchase, and it is only hy implication that a sale can he inferred as entering into their intention. The statute, hy its terms, relates to sales, and only requires that the contract of sale shall he subscribed by the party by whom the sale is to be made. In the case before us the agreement was, that the parties would buy the lands “on joint account;” and the only sale which, by implication, could have been contemplated, was a sale by themselves to third persons; and there is room for very grave doubt whether the statute has any application whatever to the case. The section, when reported by the revisers, had a elded to it, 11 and unless the person to whom the sale is to be made shall subscribe such contract, or a counterpart. thereof, or, at the time the same is executed, pay, or give security for the payment of the purchase money / ’ and they say, in a note to the section, that the clause was added to meet a rule of construction by the courts, that it is sufficient as against the party sought to be charged, if the instrument is signed by him ; and accordingly, courts of equity will decree a specific performance to sell lands against a person who Holds the written engagement of the other party, signed by him alone, though the latter may be wholly remediless—a rule of construction which they say the ablest judges in England and in this country have regretted. Chancellor Kent said, in Clason v. Bailey, 14 Johns., 489, that he thought the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding; and he yielded his judgment only to the established rule of construction in such a case. Therefore, if the contract is signed by the vendor only, it would seem within the principle laid down in several cases, that it *424 is binding upon, and may be specifically enforced in equity against the vendee (Ballard v. Walker, 3 Johns. Cas., 60; Roget v. Merritt, 2 Caines, 120; Gale v. Nixon, 6 Cow., 448; First Baptist Church v. Bigelow, 16 Wend., 28; Worrall v. Munn, 5 N. Y. [1 Seld.], 229). Section 11 of the Revised Laws of 1813 (1 Rev. Laws, p. 78), differed from the Revised Statutes in this that it merely required the contract to be in writing, and signed by the party to be charged; the latter statute, as the court say, in First Baptist Church v. Bigelow-, supra, having made provision for binding the vendor only, and not the vendee. But it is somewhat doubted in that case, whether it was intended to make a subscription by the vendor obligatory upon the vendee. Certainly the change in our present statute, from that part of section 11 of the former statute, which rendered the signing by the party to be charged alone necessary, and from the section as reported by the revisers, is very significant, and fairly raises the presumption that it was intended to recognize the rule of construction which had been adopted under the former statute.
While I do not find any case in this State, since the Revised Statutes were enacted, where a signing by the vendor only was held to be binding on the vendee, without any act on the part of the latter, I do find one or two cases in which it is perhaps assumed that the contract requires his subscription (Coles v. Bowne, 10 Paige, 526; Champlin v. Parish, 11 Id., 405); and in First Baptist Church v. Bigelow, ubi supra, it is questioned whether the vendor’s subscription alone will make a contract binding on the vendee. The dictum in Worrall v. Munn, supra, of Mr. Justice Paige, is merely to the effect that a contract for the sale of lands, signed by the vendor only, “if accepted by the purchaser, and acted on by him,” may be enforced against such purchaser. However that may be, the contract must be subscribed by the party making the sale, and a mere parol contract is nudum pactum.
*425 The contract which the statute requires to be in writing, is between seller and purchaser, by which the former agrees to sell, and the latter to buy; and the statute may be satisfied if the contract is signed by the seller only.- But even if it is not satisfied without a signing by both seller and purchaser, it nevertheless must be a contract between a seller and a buyer; and only such contracts are within the statute. All parol contracts relating to lands, or to interests in lands, are not necessarily void. For the sale of lands, they are void. Neither party can enforce them; but there is a wide difference between the kind of contract which the statute deals with, and such as was proved in this case. This was not a contract for the sale by vendor to vendee, but a contract which had for its object the purchase of lands on joint account, by which each was to contribute an equal part of the purchase money, and take title to a moiety, as tenants in common, or as joint tenants. Such a contract constituted the parties partners in the enterprise (Sage v. Sherman, 2 N. Y. [2 Comst.], 417), and as it seems to me, it is not affected by the statute.
But some cases in neighboring States hold otherwise, to which I will first refer.
In Smith v. Burnham, 3 Sumn., 435, there was an agreement to become copartners in the business of purchasing and selling lands and lumber in the State of Maine, upon a joint capital to be furnished by the parties, the profits and losses to be equally shared by them. It was averred that purchases and sales had been made by the defendant under the agreement, and moneys advanced by the plaintiff, who prayed for an accounting and dissolution of the partnership, and if any of the lands were unsold, that the defendant might be decreed to convey to the plaintiff his share. It was objected that the contract was void. Stout, J., said there was no substantial difference in the language of the statute of frauds of Massachusetts, New Hampshire *426 and Maine on that subject; or between them and the English, statute of 29 Car. II., c. 3; and after referring to several decisions upon these statutes, especially upon the English statute, holding such parol contracts to be void, he followed those decisions and gave judgment for the defendant.
An earlier case in the same court (Flagg v. Mann, 2 Sumn., 486) is somewhat opposed to Smith v. Burnham. It is held in Flagg v. Mann, that if parties are interested together by mutual agreement, and a purchase is made agreeably thereto, neither party can exclude the other from what was intended for the common benefit; and any private benefit, touching the common right, which is secured by either party, will turn him into a trustee for the benefit of both. Such an agreement, although by parol, can be enforced. The decision in that case, however, was strengthened by the fact that title to some of the lands has been vested in the parties by actual conveyances.
In Henderson v. Hudson, 1 Munf., 510, there was a parol agreement between the parties that the plaintiff should be let in as a partner in the purchase of certain real estate. The statute of Virginia was set up in defense, and the court held the agreement void. The meaning of the statute is there said to be, to reduce all parol agreements relating to lands to the level of a mere nudum pactum. And in Ridgeway’s Appeal, 15 Penn. St., 177, it was held, that where parties intend to bring-real estate into the partnership, the intention must be manifested by deed or writing. The same is stated by Mr. Justice -Stout, in his Commentaries on Partnership, § 83. And see also Gray v. Palmer, 9 Cal., 616; Pitts v. Waugh, 4 Mass., 426, where the general proposition is maintained that a parol agreement of partnership for the purchase of lands is insufficient. In Gray v. Palmer it was a mere dictum; and in Pitts v. Waugh the point decided- was, that a dormant partner was not *427 liable to the vendor upon a contract of purchase made by his copartners.
To the contrary, however, is Bunnel v. Taintor, 4 Conn., 568, where two persons entered into a parol agreement to be jointly interested in the profits arising from the purchase and sale of certain tracts of land. One was to make the bargains and the other to furnish the money, and to take the deeds in his own name; and it was held, in an action for a share of the profits, that the agreement was not within the statute of frauds. A similar decision was made by Vice-Chancellor Wig-ram, in Dale v. Hamilton, 5 Hare, 369, where it was held that an agreement to form a partnership for the purpose of buying and selling land, might be proved by parol; and that it might be shown by parol that certain land had been bought for the purpose of the partnership, and, consequently, that the plaintiff was entitled to a share of the profits obtained by the resale. And in another case (Essex v. Essex, 20 Beav., 449), it was held, with respect to that part of the statute of frauds which relates to lands, that a partnership constituted without writing is as valid as one constituted with writing; and if a partnership is proved to exist, then it may be shown that its property consists of land, although there may be no signed agreement, as required by the statute (see, also, Lindley Partn., 92; Fall River Whaling Co. v. Borden, 10 Cush., 458).
The statute of frauds in Massachusetts, under which the decision in Smith n. Burnham, supra, was made, provides, that “ no action shall be brought ... to charge any person . . . upon,any contract for the sale of lands, tenements, hereditaments, or any interest in or concerning them, unless the agreement upon which such action is brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or svine person thereunto by him •lawfully authorized.”
The Massachus 'its statute is a transcript of the *428 statute of 29 Car. II., c. 3, § 4; and the statutes of the several States, in which decisions have been made invalidating parol contracts in respect to lands, are also transcripts, substantially, of the English statute. Those decisions, therefore, are authorities upon the constructions of the particular statute under which they were made, but do not aid us in the construction of our statute, which, as we have seen, is different in essential particulars from the English statute.
Even under the English statute and the statutes of other States, I am not satisfied that the clear weight of authority is in favor of the invalidity of parol contracts for the sale of lands, or any interest in or concerning them ; and so far as the law is affected by the decisions, it may, I think, be considered as, at least, still an open question, whether, under any of the statutes, such contracts are required to be signed by both the vendor and vendee.
Assuming, therefore, that the contract, in the case before us, is not affected by the statute of frauds, it remains to be seen what rights and interests the plaintiff had, which can be enforced or protected by a court of equity.
The lands, which were the subject of the contract, were purchased by the defendant for the joint account of the parties. The title was taken in the defendant’s name, he paying the whole consideration or purchase money, and refusing to receive any part from the plaintiff, or to allow him to participate in any manner in the purchase. The interest, therefore, of the plaintiff, was an undivided half of the lands, upon paying one-half of purchase money.
I am inclined to think the only question in this case, is whether the contract is within the statute of frauds ; and, having determined that it is not, the plaintiff is entitled to the relief sought.
Before the Revised Statutes, a trust would have resulted in his favor 'by operation of law (Boyd v. Mc *429 Lean, 1 Johns, Ch., 582: Bottsford v. Burr, 2 Id., 405; Steers v. Steers, 5 Id., 1; Hess v. Fox, 10 Wend., 437).
By the Revised Statutes, however, resulting trusts were, in most cases, abolished (1 Rev. Stat., 727, §§ 51, 53), it being provided that where a grant is made to one person, the consideration having been paid by another, no trust shall result in favor of the latter (section 51), except where the former shall have taken an absolute conveyance, in his own name, without the consent of the latter, or in violation of some trust.
This case, however, does not probably fall within section 51, no part of the consideration having been actually paid by the plaintiff; but it may, perhaps, come within the exception contained in section 53, which excludes the preceding sections from operating upon trusts arising or resulting by implication of law.
The reason for abolishing formal trusts, as stated by the revisers, were, that they answered no end whatever, but to facilitate fraud; to render titles more complicated, and to increase the business of the court of chancery. But as to implied trusts, they could not be abolished, as their existence was .necessary to the prevention of fraud. The revisers proposed an important change, in preventing a secret resulting trust from being created by the act of the party claiming its benefit; and the. enactment of section 51 of the statute of uses and trusts, resulted from such recommendation. Justice Harris says, in Hosford v. Merwin (5 Barb., 57), “the object of the legislature was to prevent the creation of passive or formal trusts; and to accomplish this object, it became necessary to declare void every secret result, ing trust, created by the voluntary payment by one person, of the consideration of a conveyance to another” (See also Sieman v. Austin, 33 Barb., 17).
The formal trusts abolished by the statute, are such only as would otherwise result from the payment of the consideration by one, and taking the title in the name of another. Oiker trusts arising or resulting by impli *430 cation of law are not affected by the statute. So far as such trusts relate to real property, and are not within the statute of frauds, they are valid, notwithstanding the statute of uses and trusts (Hess v. Fox, 10 Wend., 436).
There is nothing in the agreement between the parties to this case, which brings it within any of the reasons which'induced the abolition by the legislature, of ■the class of formal trusts which were designed to facili - tate frauds. The contract was merely to join in the purchase of certain lands for their joint profit, each to contribute an equal share of the purchase money, and equity and good conscience requires that' each party shall carry it into effect.
But even if the trust resulting in this case was within the provisions of section 51, it might very properly perhaps be relieved by the exception in section 53, of a conveyance taken without the knowledge or consent of the party paying the money, or in violation of some trust.
In Lounsbury v. Purdy (16 Barb., 376), it was held not to be necessary that the consideration should be paid in specie, but anything representing it, arising from or on behalf of the cestui que trust, was equally available to protect the beneficial interest. Therefore, the agreement or obligation to pay, may be regarded as equivalent to payment, within the meaning of the exception referred to. A similar view is taken, in Swinburne v. Swinburne (28 N. Y., 568), where a resulting trust was sustained, a part of the purchase money having been paid by the trustee ; the only effect, the court say, of such payment, being to give the trustee alien on the trust property till he is repaid. And in Burhans v. Van Zandt (7 N. Y. [3 Seld.], 523), one of several tenants in common purchased, with his own money, the lands sold for a municipal assessment, and it was held the purchase must inure to the common benefit. To the same effect is Van Horne v. Fonda (5 Johns. Ch., *431 388), where one tenant in common purchased and took a conveyance in his own name of an outstanding title.-
In the case of Gardner v. Ogden (22 N. Y., 327), a trust was raised by implication of law, against the clerk of a broker employed to make a sale of land, who, having access to the correspondence between his principal and the vendor, in violation of the trust and confidence, became the purchaser, and it was held that he should reconvey, or account for the value of the land.
Any doubt there may be of the effect of the statute of frauds upon the contract in this case, should be given to the plaintiff; and we may, in the language of the court in Sieman v. Schurck (29 N. Y., 612) “without doing violence to the language of the statute, except this case from its operation, in accordance with the manifest equity of the transaction.” In the construction of that statute, a general principle has been adopted, that as it is designed as a protection' against fraud, it shall never be allowed to be set up as a protection and support of fraud. “ Hence, where the contract has been suffered to rest in confidence, courts of equity will enforce it against the party guilty of a breach of confidence, who attempts to shelter himself behind the provisions of the statute.
In a case in the late court of chancery (Burrill v. Bull, 3 Sandf. Ch., 15), where one of several persons interested in a lease was intrusted to procure a renewal for the common' benefit, and took the new lease in Ms own name, the assistant vice-chancellor pronounced it an attempt to shut out his associates from sharing in its advantages, and “an unmitigated fraud, against which courts of equity have ample jurisdiction to grant relief.” ' ‘
The questions .in this case are new and important, ■ and. by no means free from difficulty or doubt. But my opinion is that the plaintiff is entitled to share in the purchase and to the relief demanded.
*432 Whether the judgment, as entered, is or is not defective in the form of the relief which has been awarded, might be a question. But as no objection was taken-to it below, or raised upon the appeal, it is not necessary to consider it.
The judgment should be affirmed with costs.
McCunn and Fithian, JJ., concurred.
Judgment affirmed.